```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHAEL ANTHONY J. THOMAS,                  :
                                            :    REPORT & RECOMMENDATION
                    Plaintiff,
                                            :    23 Civ. 04642 (LJL) (GWG)
         -v.-
                                            :

                                            :
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,             :

                                            :
                    Defendant.
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

I. BACKGROUND

On June 1, 2023, Michael Thomas filed a complaint seeking review of a decision of the Commissioner of Social Security denying his application for disability benefits. See Complaint, filed June 1, 2023 (Docket # 1) ("Compl.") ¶¶ 5-8; 12-13. On August 21, 2023, before there was any briefing on the merits of the denial, the parties stipulated to remand the matter to the agency. See Stipulation and Order, dated August 21, 2023 (Docket # 8). Upon remand, the Commissioner found Thomas disabled and awarded Thomas $45,006.70 for past-due benefits. See Notice of Award, dated October 13, 2024, annexed as Ex. 4 to Daniel A. Osborn's Declaration, filed October 28, 2024 (Docket #16) ("Osborn Decl."), at 3. The Commissioner withheld 25% of this amount, or $11,251.68, for potential payment of Thomas' attorney's fees. Id.

Before the complaint was filed, Thomas and his counsel, Daniel Osborn, had entered into a retainer agreement that provided for Osborn to receive up to 25% of any past-due benefits. See

Attorney Fee Agreement, dated May 18, 2023 ("Fee Agreement"), annexed as Ex. 1 to Osborn Decl. Osborn ultimately spent only 2.7 hours on the case: 2.4 hours to draft the complaint and 0.3 hours to review and sign the stipulation of remand. See Timesheet, dated September 22, 2023, annexed as Ex. 2 to Osborn Decl. Thus, the retainer agreement allows Osborn to seek $11,251.68 in fees with a resulting de facto hourly rate of $4,167.29. In his application, however, Osborn seeks only $5400 as compensation, which would result in a de facto rate of $2000 per hour. See Memorandum of Law in Support of Motion for Attorneys' Fees, filed October 28, 2024 (Docket # 17) ("Mem."), at 1.

The Government neither supports nor opposes counsel's request. See Commissioner's Response to Plaintiff's Petition for Attorney's Fees Under 42 U.S.C. § 406(b), filed November 12, 2024 (Docket # 18).

II. GOVERNING LAW

42 U.S.C. § 406(b)(1)(A) provides that "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation." The statute also provides that the fee may not exceed "25 percent of the total of the past-due benefits to which the claimant is entitled."

Even where the claimant and counsel have signed a contingency fee agreement, the court must "reduce[] the attorney's recovery based on the character of the representation and the results the representative achieved" if the court finds the fee is not "reasonable" under § 406(b)(1)(A). Gisbrecht v. Barnhart, 535 U.S. 789, 808 (2002). In Fields v. Kijakazi, 24 F.4th 845 (2d Cir. 2022), the Second Circuit held that a court should consider the following factors to assess whether a fee is "reasonable" under the statute:

> a) the character of the representation and the result the representative achieved, b) whether a claimant's counsel is responsible for undue delay, and c) whether there was fraud or overreaching in the making of the contingency agreement.

Id. at 849 (footnote omitted) (citing Gisbrecht, 535 U.S. at 808). Further, the Second Circuit directed that "as a part of the reasonableness determination, a district court must also consider whether a requested fee would result in a 'windfall' to counsel," id., that is, whether "the benefits are large in comparison to the amount of time counsel spent on the case," id. at 853 (quoting Gisbrecht, 535 U.S. at 808). After applying these factors, the Second Circuit in Fields reversed a district court determination that had reduced a requested fee from a de facto hourly rate of $1,556.98 to a de facto hourly rate of $750. Id. at 856.

## III. DISCUSSION

Here, the factors listed in Fields weigh in favor of a finding of reasonableness. First, the representation was conducted in an appropriate manner and the results achieved were ideal. The filing of the case achieved a prompt and successful result for the claimant in that Thomas was awarded past-due benefits a mere four months after filing his complaint in this Court. In cases where, as here, counsel achieved the result a claimant sought, courts have found that the first factor supports a finding of reasonableness. See, e.g., Hill v. Comm'r of Soc. Sec., 2023 WL 4827265, at *3 (E.D.N.Y. July 27, 2023); McEneaney v. Comm'r of Soc. Sec., 2023 WL 9796621, at *3 (S.D.N.Y. Nov. 17, 2023), adopted, 2024 WL 815984 (S.D.N.Y. Feb. 27, 2024).

Second, Thomas' counsel did not engage in any delay of the proceedings, which might have artificially increased past-due benefits and thus increased the fee award. To the contrary, the case was resolved with unusual promptness.

Third, there is no evidence that Thomas' counsel engaged in fraud or overreaching when making the contingency arrangement. The Fee Agreement was signed by Thomas and states

3

plainly that Osborn would be entitled to an amount to be determined by the Court, "not to exceed twenty-five percent (25%) of" any past-due benefits. The Fee Agreement also authorizes the SSA to "withhold twenty-five percent (25%) of past-due benefit" and to "pay directly to [Osborn] his fee." Fee Agreement, at 1.

As to the question of whether the requested fee would result in a "windfall" to counsel, the Second Circuit in Fields stated that a "windfall" occurs when it is "truly clear that the fee is unearned by counsel." 24 F.4th at 849. In making the "windfall" determination, a court must "consider more than the de facto hourly rate." Id. at 854. Fields emphasized that "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." Id. The Second Circuit directed that "[a]mong the factors" a court should consider in conducting the "windfall" analysis are the "ability and expertise of the lawyers and whether they were particularly efficient," "the nature and length of the professional relationship with the claimant," "the satisfaction of the disabled claimant," and "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." Id. at 854-55.

As to the first "windfall" factor, Osborn frequently and ably represents social security claimants. Furthermore, by spending only 2.7 hours on the matter, which involved a record that spanned 817 pages, see SSA Administrative Record, filed July 31, 2023 (Docket # 6), Osborn acted with efficiency. See Fields, 24 F.4th at 854 (factor is met where an attorney "accomplish[es] in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do").

With respect to the nature or length of the professional relationship with the claimant, Osborn does not claim to have represented Thomas at the administrative level. Thus, we will assume that the length of the relationship was brief, and that the relationship was not a

4

particularly profound one. This case is thus distinguishable from Fields, where the Second Circuit emphasized the attorney's lengthy work at the agency level. See 24 F.4th at 855.

The record provides no information on whether Thomas was satisfied by Osborn's representation. However, given the successful outcome, we consider the factor to disfavor finding the fee to be a "windfall." See, e.g., Finnegan v. Commr. of Soc. Sec., 2024 WL 4494088, at *4 (E.D.N.Y. Oct. 15, 2024) ("[T]he Court presumes that Plaintiff is satisfied with receiving the past-due benefits that he sought; there is no evidence in the record to the contrary.").

As to the uncertainty of the result, Osborn has not argued that there was anything particularly uncertain about achieving a remand in this case. Nor did he need to expend much effort to obtain the remand. These circumstances combined with the speed with which the remand was offered suggests that this factor favors finding the fee to be a "windfall." As the Second Circuit noted in Fields, a "windfall is more likely to be present in a case . . . where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery." 24 F.4th at 856.

The factors are thus mixed with respect to the "windfall" issue. Nonetheless, we are mindful of the Second Circuit's admonition that a "windfall" occurs only when it is "truly clear that the fee is unearned by counsel." 24 F.4th at 849. As to whether the requested hourly rate of $2,000 per hour is too high, district courts in this Circuit have come to differing conclusions. One survey of court-ordered or court-accepted de facto rates since Gisbrecht found rates only as high as $1,750. See, e.g., McEneaney, 2023 WL 9796621, at *4. Some courts have limited the de facto rates to far lower amounts. See Susca v. O'Malley, 2024 WL 3905663, at *5 (S.D.N.Y. Aug. 1, 2024) (reducing requested de facto hourly rate of $5,298.12 to $1,000 where counsel had

5

filed no brief and done no work at the administrative level), adopted, 2024 WL 3904797 (S.D.N.Y. Aug. 22, 2024).

On the other hand, several district courts have permitted de facto rates at a level near $2,000 or even higher. For instance, in Kazanjian v. Astrue, 2011 WL 2847439 (E.D.N.Y. July 15, 2011), the district court permitted a $2,100 hourly rate where an attorney "was able to draft a detailed, case-specific (i.e., non-boilerplate) complaint; a moving brief; a reply brief; conduct a review of the record and the Commissioner's opposition brief; and perform all of the various and sundry tasks and communications attendant to those efforts" and noted that the time period was half what it would have taken another attorney to accomplish. Id. at *2. Similarly, in Fortier v. Comm'r of Soc. Sec., 2024 WL 4264865 (S.D.N.Y. Aug. 13, 2024), the court approved a de facto rate of $2,052.58 where the attorney had represented the claimant extensively at the administrative level, finding that the rate was "within the range of de facto hourly rates approved by courts within this Circuit." Id. at *5.

While the attorney work was far more significant in Kazanjian and Fortier than the attorney work in the present case, in at least one case a rate near $2,000 was awarded even in the absence of extensive efforts by the attorney. See Mannouris v. Commr. of Soc. Sec., 2023 WL 9118792, at *4 (S.D.N.Y. Dec. 22, 2023) (approving de facto hourly rate of $1,918 where counsel filed no brief and apparently did not represent claimant at the administrative level), adopted by 2024 WL 81851 (S.D.N.Y. Jan. 8, 2024). In one out-of-Circuit case, King v. Kijakazi, 2023 WL 1782032 (D.N.H. Feb. 6, 2023), the district court allowed a de facto rate of $2,927 per hour where the commissioner agreed to remand "[a]lmost immediately" after counsel filed a "two-page, form complaint." Id. at *3 (modification in original).

Finally, policy reasons favor an award at the high end of the range of reasonable rates.

6

As the Second Circuit recognized in Fields, "[l]awyers who operate on contingency — even the very best ones — lose a significant number of their cases and receive no compensation when they do. 'In the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk.'" Id. at 855-56 (quoting Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990)).  Here, counsel has already voluntarily reduced the award that would be permitted by the contingency fee arrangement.  A court's insistence on a further reduction could "only serve to diminish the pool of attorneys willing to accept the risk of taking on social security cases on a contingency fee basis in the future." Marden v. Commr. of Soc. Sec., 2024 WL 4499312, at *2 (S.D.N.Y. Oct. 16, 2024) (internal quotation marks and citation omitted).

In light of the fact that, as already discussed, the factors for judging reasonableness identified by courts have largely been satisfied in this case, the fact that Thomas' counsel willingly reduced his fee to less than half of the agreed-to amount, and the importance of encouraging attorneys to accept social security cases on a contingency basis, the $2,000 per hour award sought here is not so large in relation to the hours expended by counsel that it warrants reduction.

We note that on September 26, 2023, this Court awarded plaintiff's counsel attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, in the amount of $1,445.40.  See Stipulation for Allowance of Fees Under the Equal Access to Justice Act and Costs under 28 U.S.C. § 1920, dated September 26, 2023 (Docket # 11).  Counsel is required to remit to the claimant the $1,445.40 EAJA award.  See Gisbrecht, 535 U.S. at 796 (where a fee award is made both under the EAJA and 42 U.S.C. § 406(b), the claimant's attorney must "refun[d] to the claimant the amount of the smaller fee").

7

Conclusion

Counsel's motion for an award of $5,400 (Docket # 15) should be granted. In addition, counsel should be ordered to return to Thomas the $1,445.40 he previously received pursuant to the EAJA.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Liman. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: December 3, 2024
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge